Case No. 19-30688 Wiener Weiss v. Fox And we'll begin with Mr. Cerfi for Ms. Fox May it please the Court Good morning, Your Honors, and thank you for allowing us to do this argument electronically I'm privileged to represent Ms. Fox in this summary judgment appeal It's surely paradoxical that Ms. Fox... Just a minute. We've got both counsel on the screen Yes. Do you want counsel to cover their screen when they're not arguing? I'll leave that up to the Chief Judge. It's just different from our first case I think we're fine. Mr. Kombach is muted, so I think we're fine. Go ahead and proceed, Mr. Cerfi Thank you It's surely paradoxical that Ms. Fox, a single mother who spent millions of dollars to get a divorce and secure an equitable property division Ended up instead with a multimillion-dollar tax lien and a summary judgment that virtually cedes control of her business to her once-trusted lawyers It's my hope that the law delights in consistency and hates such harsh paradox Like fast traffic through an unregulated circus, this paradoxical result will adversely impact community property divisions It will spur strategic bankruptcy filings and, most importantly, demean fiduciary relationships Mr. Cerfi, let me ask you about the Rule 1.8 ruling. I'm going to assume, arguendo, that we have jurisdiction over it How does this case differ from an ordinary contingency fee where you would not call that a business transaction? Is it your position that any time you do something other than take a percentage of dollars, it is a business transaction, or is there something else about this case? No, that is not my position, although it's close to my position My position, I think, simply stated is that any time you barter legal services for an interest in a business owned by your client, that implicates Rule 1.8 And it's peculiarly implicated in this case, since this was not the first or the second, but the third, midstream fee change in the relationship between these parties Do you think that ethical rules change, so if Ms. Fox walked in the door today for the very first time, is that a different circumstance than when she's already a client in that case and they're negotiating a new fee? Of course it is Explain that Once you become a client, and I'll speak to this more, we cross the Rubicon, so to speak, and enter into the world of the Cardozian Pompilio of Honor that requires us to act as fiduciaries Essentially, it's equally at stake in this case if I may say Can I just ask you one thing on that? You all did not appeal the denial or the summary judgment that set aside your breach of fiduciary duty counterclaim Do we nonetheless need to consider the fiduciary nature of this relationship in our assessment of the rest of this case? You need to consider the fiduciary relationship, and yes, we did appeal, because, I'm sorry, yes, you do, the answer is simply yes You argue that you appealed the 1.8 ruling, but you don't argue that you appealed the summary judgment denying the counterclaim No, no I just want to clarify that May I also go back and suggest that equally at stake in this case is the essential right to trial by jury A case we didn't cite in our briefs, but is peculiarly applicable is a case called Simler v. Conner, 372 U.S. 221 where it would seem to be settled law under federal procedure that the reasonableness of disputed fees, no matter how orthodox, even if it's in a standard contingent fee agreement, is always required to be resolved by a jury Yet in this case, the vague language of a very unorthodox agreement not only skirted the high scrutiny required by Louisiana law, but the resulting fee, whatever it is, was fair jury review This was accomplished by improperly reversing critical evidentiary presumptions, misplacing the burden of proof, shedding inconvenient expertise, and having the court assume the rule of fact finder instead of issue locator In the end, it resulted in a baffling summary judgment decreeing specific performance of something that simply abounds with harsh uncertainty Let me ask you this. If we were to affirm this today and issue an order that you all needed to comply with the district court's order today, what would be involved in that? I have no earthly idea, Your Honor. Has counsel opposite suggested what that is? They have suggested. I'm not sure that their suggestions have clarified the matter to me. I'm waiting to hear from my good friend on the other side as to perhaps what that involves. I'll ask him, too. Yes. I mean, if you need a highlight, Your Honor, to the problems with the 2013 fee agreement, you really need to look no further than to the January 2016 agreement that was tendered to my client, entitled Agreement to Implement, to see all of the problems that resulted from, if you'll forgive me, the garbled syntax of that agreement, as well as its lack of any degree of clarity. Now, I want to hurry forward because I see my time pass evaporating. I want to highlight the three points of my argument. First, the district court incorrectly determined that the 2013 agreement was unambiguous and capable of specific performance. Secondly, the district court incorrectly determined that the agreement was not a business transaction subject to Rule 1.8. Thirdly, the district court incorrectly determined that the midstream fee modification and the resulting fee, whatever it is, are reasonable as a matter of law and solely determined by local expertise. I suggest you need to state why you feel Rule 1.8 is even in play and that you failed to list it in your notice of appeal, the ruling, summary judgment ruling, saying it's not applicable. The reason is, Your Honor, that under the doctrine of merger adopted by this court, it is merged into the final judgment. And if it was not merged into the final judgment, then I have queries as to whether we even have a final judgment in this case. And the case cited by my adversaries in this matter is totally inapplicable because as that unpublished decision noted, the notice of appeal in that case was withdrawn. So here we have, under this court's well-established doctrine of merger into the final judgment of all matters accomplished there, a proper notice of appeal that brings all of these matters before the court. May I proceed, Your Honor? Yes. Let me talk briefly on the contract interpretation issue. First, the 2013 fee agreement is grammatically challenged to be euphemistic. It's unspecific and it's ambiguous. And it certainly mocks the heightened specificity standard required by Judge Higginbotham in the Wampo decision, as well as the party's fiduciary relationship. Secondly, the district court reached its contrary conclusion by usurping the jury's role in referencing disputed extrinsic evidence. That model technique, novel technique, is a clear misapplication of Louisiana principles of contract construction and violates the summary judgment procedure. Third, and especially problematic, my client does not know how to specifically perform this agreement or the fees she must pay, leading Ms. Fox to the caprice of her attorneys and her business operations. I want to briefly talk about some of the facts that underlie the problem under Rule 1.8 and 1.5. Now, as the court knows, and I won't retrace the brief, this litigation originally arose, the underlying litigation that this dispute, fee dispute arises from, originally began as a Texas divorce proceeding. A realm without contingent fees where all fees are ultimately approved by the court. After raging for years, the dispute was whisked to a Louisiana bankruptcy court in June 2019 through the paradox of a strategic filing. Ms. Fox thus hired the firms, the Appellees in this matter, in July of 2009 on an hourly rate basis, subject to the express understanding that these hourly rates... Okay, let me understand, practically speaking, you know, she agreed to this rate and then they were able to collect or to obtain a judgment for the $1.2 million. But then, when the trustee got involved, the ability to do that kind of went away. She wants to keep the lawyers. They want to get paid. I think they should get paid. So, practically speaking, they need to come up with a new fee arrangement. What is your position of how that should have transpired? Is there any number of ways that could have transpired, Your Honor? Well, give us one. Well, she could have said, we'll continue. You give us a promissory note. Okay, but the reality is, law firms have to pay their rent and their associates and their secretaries and their legal assistants every month or every two weeks or whatever it is. And they can't wait for years and years to collect on everything, or they have to make that choice. That's what a contingency fee is all about. But when they're on an hourly rate, generally speaking, law firms want to collect every month. And some unknown time in the future is not going to work and doesn't have to. They could have withdrawn had she said, I'm not going to agree to anything other than an hourly rate and I can't pay you for years. They could have withdrawn. That is allowed when you can't be paid. So, explain how she could have had the lawyers continue to represent her if she wasn't going to pay them. Well, a simple answer might be, Your Honor, is we're now asking, in 2013, after the plan has been confirmed and she is the 100% owner in the plan, we're asking you to trade us an interest in the business operation that results from the confirmed plan in exchange for continued representation. I'm not saying that they necessarily did what was right. What I'm trying to understand is, what is your position? So now you've got your jury trial. You still have to argue what should have been done, right? What would have been the right thing to do? And that's what I'm asking. What was the right thing to do given that lawyers get to get paid and she had trouble paying at any kind of reasonable time frame? At that original point of 2010? I don't know at 2013, but it's certainly at 2010. I'm going to give you a 14-second answer, Your Honor. The answer is simple. If I were presented with that position and I was in a fiduciary situation where I was bartering my legal services for an interest in a client's business and I thought what I was proposing was a fair fee agreement, I would suggest that she go get the endorsement of independent counsel to confirm the fairness and reasonableness of the fee, just as Rule 1.8a suggests. Okay. Thank you. You deserve time for rebuttal. All right. Mr. Kambeck, you can unmute. There we go. And we can mute Mr. Searcy. Okay, there we go. Okay. I'm getting used to the technology here, so bear with me. May it please the Court, a good morning. John Kambeck for the appellees Weiner, Weiss, and Madison, and Cantrose, Bate, Weaver, and Blitzer. We've always thought this was a very straightforward case, that the firms carried their burden on some research. Mr. Kambeck, why don't you go ahead and address in a better fashion than you did in your brief why Rule 1.8 is not involved in this appeal. You devoted five lines and one questionable footnote to it in your red brief. Yes, Your Honor. In a big picture, the big picture answer to that would be this would be a completely new rule for this circuit. We know in Louisiana that a contingency fee can apply to cash or property, that you can take a proprietary interest in your client's claim, not in your client's assets, but in your client's claim. Judge Hicks held in his ruling on 1.8 that there was no, in this instance, there was no present conveyance of an interest in any property, because Rule 1.8, remember, addresses transactions with the client, and the books are full of examples of when you loan money to your client, when you purchase property from your client, when you take a security interest from your client to secure a fee down the road. The ABA has got a formal opinion on a stock in lieu of fee, and that's very important. Come back, you're not answering my question. Let me restate it. You contend that we can't even consider Rule 1.8 because they did not list in their notice of appeal the summary judgment ruling about it. That's what I'm asking you about. Why do you claim we cannot consider Rule 1.8? I understand, Your Honor. Well, we cited the case, there's a tension in this circuit between the merger doctrine that my opposing counsel referred to, and then the need to specify what judgments you are appealing from. In this instance, the notice of appeal specifies three judgments, and none of them are the Rule 1.8 motion for summary judgment, which happened... Yeah, but they're the final judgment. Yes, ma'am. Can you cite us a case in the Fifth Circuit or the Supreme Court that involved a partial summary judgment that disposes of a perhaps dispositive affirmative defense, and then they appeal the final judgment that held that that prior summary judgment, that prior partial summary judgment, cannot be considered by the Court of Appeals because it wasn't mentioned. Do you have a case that's those facts? No, Your Honor, I do not. All I have is the tension that, I mean, I've reviewed the cases from the Fifth Circuit, and to me there seemed to be a tension there that we were not going to not argue that they didn't, you know, reserve their right to appeal from that rule. In this instance, the case was effectively bifurcated. Now, not bifurcated in the sense that there were two separate judgments, but the first thing that happened in the case was the Court asked the parties to file cross motions for summary judgment on the applicability of Rule 1.8a and 1.5d.1, which was the divorce argument that you can't have a contingency fee in a divorce, and we did that. It was strictly a legal issue. A cross motion for summary judgment, we briefed it extensively, and the Court ruled in our favor that neither rule applied. And had the Court ruled against you, you couldn't have gotten the judgment you did, the final judgment that they clearly did appeal, would have come out differently if the Court said, oh my gosh, this was a business transaction and you were required to do x, y, and z that you didn't do. Right? I think the case would have been over in the sense that the contingency fee would not have been enforceable if the rule had gone the other way. So how can you say a final judgment in your favor is not intertwined with a prior partial summary judgment that disposes of a fairly key argument that if it went the other way would decimate you? Yes, ma'am. I see the logic of that. Again, I just cite the Court's own confusing language in its various opinions about how to take an appeal. You actually incite various opinions. You cited one unpublished case that involved an actual withdrawal of an express appeal. And so that's a very different case. But anyway, I think you addressed it. Let me ask you one other thing on that point. You argue this is a jurisdictional point. How does the Hammer case, H-A-M-E-R, from the U.S. Supreme Court that says that federal rules of appellate procedure are not jurisdictional, how does that affect this line of cases about jurisdictional? I'm not sure I'm following you, Your Honor. I don't know the Hammer case that opposed the count. No, nobody cited it, but it's still a U.S. Supreme Court case. You still have to follow it. It was fairly recent where they held that rules of appellate procedure that are not part of a statute cannot be jurisdictional. We refer to 28 U.S.C. 1291. It talks about final judgments. I guess that's what your point would be. I understand. So I think you're trying to say that this court's rulings, one way or the other, couldn't change what the statute says, perhaps. Well, I'm just asking. So it's 138 S. Court 13 is the cite to it. But I'm just asking how that impacts this whole line of cases that makes federal rules of appellate procedure three jurisdictional. You don't know. It's okay. I mean, I'm asking about a case that you did not. I just haven't read that case. Although it's a fairly major case. But that's fine. We can't memorize every case. I understand that. You don't know is the answer. Yes, ma'am. Okay. Go ahead. Take back up where I was. I think that this whole case turns on cell attacks. And I went back and read Justice Rehnquist over the weekend. And this is critical. And everything is merged into this very point. He tells us in cell attacks. And this is the procedure for summary judgment. If the non-moving fails to establish an essential element of her case, then there can be no genuine issues of any material fact. And he goes on to say, the complete failure concerning any essential element of the non-moving party's case necessarily renders all other facts immaterial. So that's exactly what we have here. We carried our burden on summary judgment. They didn't come forward with a qualified expert who could opine, number one, that Chipnoff or David Rubin did anything wrong in terms of entering into these contingency agreements. And number two... On the rule 1.8, the court struck the experts not because of the locality rule, but because they found, as you argued, that it was a question of law. And therefore, you don't need an expert on a question of law unless, I guess you'd say, lawyers need to argue expertly. But you don't need an expert witness. So how can you defend the 1.8 ruling on that ground? Well, the 1.8 ruling is easy for me. It was strictly a legal issue. And the judge asked us to brief the applicability of Rule 1.8 under these circumstances. And both of the opposing party's Mrs. Fox experts came in. We had Professor Wolfram and Dane Cialino, who's a Louisiana-based ethics person. And they both opined, oh, well, even though the restatement doesn't say it, and even though the ABA doesn't say it, we think that it does apply. And they were trying to tell the court what the law was. And we objected to that under the U.S. Securities case out of the Southern District of New York, where Professor Wolfram was excluded for that very reason. So the court is not assisted by experts who invade. The judge is the sole and only arbiter of what the law is. And these experts were trying to come in and tell the judge what the law was. And we moved to strike. And I think it was appropriate, and Judge Hicks agreed with us. Now, when we get to the next motion for summary judgment, the issue is whether the firms did something wrong, which necessarily implicates the ramp line of decisions from the Louisiana Supreme Court, where the failure to have a qualified local expert is necessarily fatal, says the NB Industries case. The other issue on the next motion for summary judgment was whether the fee, the 40 percent contingency fee, was reasonable under the prevailing community standards. Of course, that goes back to the Supreme Court's case, Blum v. Stinson, where Justice Powell in 1984 tells us, you know, fees must comport with prevailing community standards. And that gets picked up by the ABA in Rule 1.5 and so on, carried through. How on earth is it appropriate for a lawyer in the middle of their representation, not the beginning, to negotiate with their client without sending them to, or at least recommending, independent counsel? Well, Your Honor, I think that happens quite often. And if you read the cases closely, many of these cases do involve midstream fee changes. The restatement, which is the restatement of the law of lawyers on lawyering, says, of course, the lawyer has a fiduciary duty. Of course, there's a heightened standard. Rule 1.5 in Louisiana says any change to fee must be communicated to the client. Well, we know that. The restatement says for the test, for how do you comply with this heightened standard, and number one, you have to make sure the client was aware of the effect and any material disadvantages of the change. That requirement is lessened when the client herself requests the change, which is exactly what we have here. She requested a change. She didn't request, she didn't draft this document that is being debated. She requested a change, and I asked her counsel opposite about that. Because I understand, lawyers are probably paid. What I'm having trouble with, as you just said, was the client aware of the effect. The district court found that as a matter of law. That just does not sound like a matter of law. It's part of the expert issue. What I know and understand and what makes sense to me and what's in my head is not typically a question of law. Yes, Your Honor. We put forward, both through our expert and independently, a considerable amount of email exchange with Ms. Fox. It starts with the more money I get, the more money you get, where she invites options. The truth is, and I don't mean to answer Mr. Xerces' question, but she didn't have any other options other than a contingency fee agreement. So I think that that was axiomatic. That's where this was headed. The firms suggested a fee agreement. She counters. She wanted it to be more stair-step. She asks these insightful questions. How will the fee work if I get cash? How will the fee work if I get part cash, part property? How will the fee work if I get all property? How will the taxes work? On and on and on. And it culminates in this total understanding email. Thank you for answering all my questions. I wanted to have a total understanding of the agreement so no misunderstandings would pop up down the road. She signs the agreement. She sends it back to them. Throughout the course of the representation, of course, the contingency representation is six years. So it goes from May of 2010 through April of 2016. She repeatedly reaffirms the firm's right to a contingency fee in her recovery. And she does it so in the context, oh, you're going to be very pleased when you see all this. And maybe you can answer it. I asked Mr. Cerqui this question. Let's say today we affirmed and we said, Ms. Fox, you got to pay right now. You've got to go and comply with the district court's order right now. I have no clue how she would do that. There's a piece of it I understand. There's some money out there and taking a percentage of that money is easy enough, I suppose. But the rest of it, explain it to me. What would she do if today we ordered her to comply with the district court opinion? Sure, this happens all the time. When a contingency fee is over and the recovery is reduced to the client's possession, the client has to turn around and pay the lawyers. When it's cash, it's pretty easy. It's a check. It's a conveyance. When it's property, and we have this situation in Louisiana and my neck of the woods all the time. In Texas, I'm sure the case is true. We have a contingency fee on mineral rights. You see that a lot. So at the end of the representation, if the client prevails, the client turns around and negotiates an assignment with the lawyer. That's when it becomes a transaction with the client. That's when the client needs to be instructed to go seek or have the opportunity to seek independent representation. So she can't comply with the district court's order without negotiating with you all? If I want nothing to do with you all anymore, I just want to comply with this order and move on with my life, how is she supposed to do that? Well, I think that we have a judgment for specific performance. And again, the cases are full of judgments for specific performance without line item instructions on what to do. It's not an injunction, and opposing counsel conflates those two concepts, between injunction, where you have to have specific instructions and time periods, and a specific performance. I mean, there's plenty of cases the court orders specific performance. The court's held that the agreement is unambiguous. The court has accepted our position that she owes us 40% of everything she got, cash and property. Well, now she has to convey it to us. And we can enforce a specific, I mean, in the context of enforcing a judgment, if she doesn't voluntarily comply with the assignment of her membership interest in Louisiana Truck Stop and Gaming, with the check of our 40% interest of the distributions to her in what I call the interim period. If she doesn't do that, well, we can enforce the specific performance judgment. Your Honor, we can even do discovery in the context of enforcing the judgment. I mean, the rules specifically allow for that, and it can be common when you're enforcing a judgment. Oh, I used to do collection cases. I know all about that. Well, I mean, I don't suggest that this is the case. No, you don't want me to make sure. The collection cases I was doing, I was trying to collect money, and so on behalf of a client. So you're trying to find where is the money? I get that. I'm still trying to make sure. I mean, can you walk me through specifically, like, can she turn over gaming rights? Is that legal under Louisiana law? Because they're very specific, their gaming laws. Your Honor, there are regulations about ownership of gaming assets that we would comply with. There may be some hoops we'd have to jump through in the terms of enforcing the judgment. Let me just, if you would allow me, address this. You know, during the course of the representation, Mrs. Fox, you know, she contacted the firm. She contacted David Rubin and Chip and said, look, I'd like to have a meeting. And she met with them and Mr. Rubin's office in Baton Rouge, and she said, I think when this is all over, I'd like to keep the 100 percent in me and, you know, not convey you your 35 percent interest. And these sites are in the, I mean, this is out of Rubin's and Knopf's deposition. And so she said, I'd like to buy you guys out when this is all over. And so the firms are like, well, fine, that sounds reasonable. You know, we'll work with you. So when we got to the end of the representation in January of 2016, David Rubin put together this implementation plan. You know, what this was was an alternative to the firms. Instead of the firms taking the 40 percent that they were entitled to in her membership interest in this company that holds all the assets, they offered to take a charging order on the company. You know, if money comes out of the company, we get 40 percent. If you sell the company, we get 40 percent. It was a perfectly reasonable alternative that gave Mrs. Fox what she voiced that she wanted. Now, I said in our brief, she didn't want to negotiate along those lines. Fine, we'll take the 40 percent. As a matter of fact, in that colloquy, in those emails that we cited, David Rubin does a great job. He says, look, you know, you and I both know we're entitled to 40. You said you didn't want to give us 40. You wanted to look for another way to pay our fee. Remember that email? And we gave you that option. If you don't want to take that option. And then Mrs. Fox replies, and this is classic. She goes, I understand. I'm fine with staying the course. She acknowledged explicitly that staying the course meant 40 percent conveyance of the membership interest to her. This is before or after she hired independent counsel. This is in January of 2016. I don't know when she hired independent counsel, Your Honor. We don't know the independent counsel. One of the problems with all of this is you keep putting everything on her, but she did not have the benefit of objective legal advice on all of this stuff until she hired the counsel sometime in 2016. So that's part of the problem, in my view, is you're saying she understands this, but then when we get into it, maybe she doesn't. And she would have understood it better, at least, if she'd had independent counsel. Well, we've always taken the position, and Judge Hicks accepted the position, that 40 percent of their gross recovery, whether cash or property, couldn't be clearer. I mean, we've cited that Henry Lawrence case in the New York Supreme Court, which is a really good case. You know, the court said, look, I mean, anyone would understand that. And the court goes on. What about the tax implications that she said were not clear? Well, she asked about the tax implications. Yeah, and y'all didn't really get them right, I don't think. Well, let me refer the court to what I call the million-dollar hypothetical email. This is in August of 2013. She goes, now, if I get a million dollars, walk me through how it works. And David Rubin replies, and David says, look, you would owe us 40 percent off the top, you would retain the balance, and you would pay tax on the whole. First thing he says, we don't know how the capital gains tax would work. But then he says, you would retain, we'd get 40 percent off the top, then you'd pay taxes on the whole million. And she accepts that. So, I mean, I don't – I mean, the fact that there are taxes, I don't know if that's a basis to say I didn't understand it, Your Honor. But I think that the same consequence happens in many contexts, you know, in non-personal injury contingency cases where you're being compensated for property damage, things like that. There's often tax consequences. There's a number of – Counsel, real quick, you've got about 30 seconds. Assuming we rule that Rule 1.8a is in play in this appeal, why isn't it a genuine dispute of material fact as to the result under 1.8a concerning retaining independent counsel? Well, Your Honor, assuming you have a jurisdiction over the issue, we argue that it's a straight legal issue. Does it apply, does it not apply? I think the answer is very clear. We've cited it in our briefs both at this court and below. I'm out of time, so. Well, you can finish your answer. Well, I think I did. I mean, I – All right, thank you. Okay, thank you. Okay, thank you, Mr. Kambach. Mr. Thurston, you have time for rebuttal. I need to unmute you. Hold on, we need to unmute you. Can you do that, Pam, or does he need to do it? Okay. Is it something on his machine, you think, or? You're muted also. Okay, there we go. You're unmuted now.  Yeah, thank you. Thank you, Ron. Justice Barksdale, may I address your question first? And I would refer the court to Dickinson v. Auto Center, where this court said, under the final judgment appealability rule, the party may obtain review of prejudicial, adverse, interlocutory rulings on his appeal from adverse final judgments. The law could not be clearer under that merger standard. The case relied upon by my respected adversary is an unpublished opinion called Molina. There, the final judgment was not appealed. There is no tension in this circuit on that issue. Secondly, the locality rule has no applicability in this case because the standard of care, as the Louisiana court in Hodges tells us, is one set by the rules of ethics of the Louisiana Bar. Point three, they bore a significant burden of proof. And the arguments that you just heard from my distinguished colleague virtually change the standard of proof. That standard of proof is very high. In the instance of a midstream fee change, where that happened not once, but twice, because such midstream fee changes are presumed unlawful and void. Now, let's look at the circumstances of the second fee change. Fee change. That occurred in May of 2013 at a time when there had been confirmation of a bankruptcy reorganization. Now, I'm not really sure what that 2013 agreement says. Its syntax and grammar are not the best. But if it was a trade of legal services or fees, it violated rule 1.8. Because it did not depend, there was nothing in issue at that time. At that point in time, the only risk was the ultimate value of the transferred interest, not the contested outcome or the outcome of contested claims. There are, moreover, no exceptions under rule 1.8a for contingent fees. And I don't understand how, in those circumstances, an interested party, that is, the lawyer, can adequately discuss and disclose the pros and cons of such a midstream change at that point in time. Let me ask you this, Mr. Searcy. You've asked us to reverse and remand. Let's say that we did. I've asked some questions about what if we affirmed. What if we did reverse and remand? What happens next? We just reversed the whole thing, remanded. What happens next? Well, my outcome is that you reverse the judgment, you rule that the 2013 fee agreement is void, and that the only thing that is remanded is the case that was asserted for Quantum Merrill recovery. Oh, okay. But if we undo the 2013, doesn't that put the 2010 back in play? Absolutely not, because the 2010 agreement was expressly abrogated by the 2013 agreement. Yeah, but if we undo the 2013 agreement, then don't we also undo the express abrogation? No, we're rendered to a remedy of Quantum Merrill. Okay. Now, let me just, I see I have 15 seconds. I want to urge two things. None of these fiduciary problems trouble the trial court. After ruling on 1.8, he expressly noted that reasonableness was a question for the trier of facts, which we agree with. Secondly, in his first ruling, he said that this was strictly an issue of law to be decided by the trial court, which I don't agree with, and said I need no experts. Yet on the second ruling, on the final summary judgment, he said it is the exclusive province of expertise, local expertise, which, again, I don't agree with. So we respectfully request that the judgment be reversed, that the issue on the question of the fee agreements  and that the only thing to be remanded is the issue of what fees are owed under a Quantum Merrill standard. Okay. Thank you very much, Mr. Cormack. We appreciate moving you all, and we would ask the courtroom deputy to please excuse you all from the courtroom, the virtual courtroom, as well as the public. Thank you, Your Honor. Thank you, Your Honor.